IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLEVE COTTON, III and DARRYL T. SCOTT, individually and on behalf of the class defined herein, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 07 C 5005 |
| v. | ) ) ) | |
| ASSERT ACCEPTANCE, LLC, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Cleve Cotton, III and Darryl T. Scott bring the present one-count First Amended Complaint against Defendant Asset Acceptance, LLC ("Asset Acceptance"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601, *et seq.* Before the Court is Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the Court, in its discretion, grants Plaintiffs' Rule 23 motion.

## BACKGROUND

In their First Amended Complaint, Plaintiffs allege that Asset Acceptance is engaged in the business of purchasing charged-off consumer debts, including telecommunications debts, and enforcing the debts against consumers. (R. 8-1, First Am. Compl. ¶ 9.) On February 26, 2007, Asset Acceptance filed a lawsuit against Cotton in the Circuit Court of Cook County to collect a debt for personal telecommunications services. (*Id.* ¶ 14.) The state court entered a default judgment of $2,373.00 against Cotton in June 2007. (*Id.*) On or about June 18, 2007, Asset

Acceptance filed a lawsuit against Scott in the Circuit Court of Cook County to collect a debt for personal telecommunications services. (*Id.* ¶ 15.) Asset Acceptance filed these state court lawsuits as an assignee of AT&T, a telecommunications company regulated by the Federal Communications Commission. (*Id.* ¶ 16.)

Plaintiffs further allege that the charges for which recovery was sought in their state court lawsuits were more than two years old and that the applicable statute of limitations to an action for the recovery of charges by a telecommunications carrier regulated by the Federal Communications Commission is two years pursuant to 47 U.S.C. § 415. (*Id.* ¶¶ 17, 18.) Plaintiffs also allege that Asset Acceptance regularly files and threatens to file lawsuits on federally-regulated telecommunications debts that are more than two years old at the time of the filing. (*Id.* ¶ 22.) Furthermore, Plaintiffs contend that Asset Acceptance engages in a pattern and practice of filing lawsuits on time-barred debts of modest amounts knowing that the persons sued could not retain counsel to defend such suits except by paying an amount comparable to that sought in the lawsuits. (*Id.* ¶ 26.) Plaintiffs thus maintain that Asset Acceptance's conduct constitutes both a deceptive and unfair collection practice in violation of the FDCPA. (*Id.* ¶ 28.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006).

Failure to meet any of these Rule 23(a) requirements precludes class certification.  *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).

In addition to satisfying the requirements under Rule 23(a), a party seeking class certification must also establish that the proposed class satisfies one of the requirements set forth in Rule 23(b).  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Oshana*, 472 F.3d at 513.  Here, Plaintiffs request certification of the proposed class pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615.  Under Rule 23(b)(3), members of a certified class may opt out and pursue their claims individually.  *See In re Allstate Ins. Co.,* 400 F.3d 505, 508 (7th Cir. 2005).

The party seeking class certification has the burden of establishing that certification is proper.  *See Oshana,* 472 F.3d at 513; *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).  In determining whether a party has carried that burden, a court need not accept all of the complaint's allegations as true.  *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).  Rather, in deciding whether to certify a class, the court "should make whatever factual and legal inquiries [that] are necessary under Rule 23."  *Id.* at 676. Finally, district courts have broad discretion in determining motions for class certification.  *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 2334, 60 L.Ed.2d 931 (1979); *Payton v. County of Carroll,* 473 F.3d 845, 847 (7th Cir. 2007).

## ANALYSIS

Plaintiffs define the class they seek to certify as follows:

The class consists of (a) all individuals (b) against whom defendant Asset Acceptance, LLC filed a lawsuit in Illinois, Wisconsin or Indiana (c) to collect a debt for cellular or other federally regulated telecommunications services (d) where any of the telecommunications charges antedated the filing of the lawsuit by two years, (e) which lawsuit was pending at any time during a period beginning one year prior to the filing of this action and ending 20 days after the filing of this action.

(*Id.* ¶ 32.)

## I.      Federal Rule of Civil Procedure 23(a)

### A.          Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), Plaintiffs must show that the number of members in the proposed class is so large that joinder would be impracticable.  *See Pruitt v. City of Chicago, Ill.,* 472 F.3d 925, 926 (7th Cir. 2006).  Although there is no bright-line rule for numerosity, a class of at least forty members is sufficient to satisfy the numerosity requirement.  *See id.*; *Hinman v. M &M Rental Ctr., Inc.,* 545 F.Supp.2d 802, 805 (N.D. Ill. 2008).  Because Plaintiffs point to evidence that there are approximately 7,900 individuals who may fit the class definition, Plaintiffs have met the numerosity requirement under Rule 23(a)(1).

### B.          Commonality

Rule 23(a)(2) requires that Plaintiffs prove the existence of questions of fact or law common to the proposed class.  *See Culver v. City of Milwaukee,* 277 F.3d 908, 910 (7th Cir. 2002) (class must be reasonably homogeneous); *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998).  "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."  *Keele,* 149 F.3d at 594.  A common nucleus of fact exists when a defendant has "engaged in standardized conduct towards members of the proposed class."  *Id.*

Plaintiffs contend that the common nucleus of operative fact is that Asset Acceptance brings or threatens to bring lawsuits to collect federally regulated telecommunications debts that

are over two years old, and thus are time-barred under the Federal Communications Act ("FCA"). *See* 47 U.S.C. § 415. Plaintiffs also maintain that Asset Acceptance's conduct gives rise to two legal questions: (1) whether the FCA statute of limitations applies; and (2) whether filing or threatening to file time-barred lawsuits violates the FDCPA.

Asset Acceptance, on the other hand, argues that because many of the proposed class members' telephone bills contain both state-regulated and federally-regulated services, their claims are not subject to common facts. It is well-established, however, that "[t]he fact that there is some factual variation among the class grievances will not defeat a class action." *See Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992); *see also Keele,* 149 F.3d at 594 ("factual variations among class members' grievances do not defeat class action.").[1] Indeed, because Asset Acceptance's alleged conduct was standardized as to the putative class members and the class members share factual and legal questions, Plaintiffs have met their burden in establishing the commonality requirement under Rule 23(a)(2). *See Keele,* 149 F.3d at 594; *see, e.g., Cicilline v. Jewel Food Stores, Inc.,* 542 F.Supp.2d 831, 836 (N.D. Ill. 2008).

## C.     Typicality

The typicality and commonality requirements are usually interrelated. *See Rosario,* 963 F.3d at 1018. Under Rule 23(a)(3), "the typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police*, 7 F.3d at 596-97; *see*

---

[1] Asset Acceptance also argues that Plaintiffs' claims cannot be adjudicated on a class-wide basis because each putative class member's claims hinges on individualized evidence. The Court will discuss Asset Acceptance's class-wide proof argument under the predominance requirement pursuant to Rule 23(b)(3).

*also De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.").

Here, the issues are plain enough from the pleadings to determine that the named Plaintiffs' interests encompass the putative class members' interests based on Plaintiffs' allegations that Asset Acceptance brings collection actions on telecommunications debts after the federal statute of limitations has run. *See General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Stokely-Van Camp*, 713 F.2d at 232 (plaintiff's claim typical if it arises from same practice or course of conduct giving rise to other class members' claims). Nevertheless, Asset Acceptance asks the Court to "probe behind the pleadings" in an attempt to show that Plaintiffs' claims have factual differences and that Plaintiffs' claims lack merit. *See Falcon,* 457 U.S. at 160. At this stage of the proceedings, however, the Court will not "delve into the merits of the ultimate issues in the case." *See Cicilline,* 542 F.Supp.2d at 835. Moreover, class members' claims need not be factually identical to satisfy the typicality requirement. *See Brieger v. Tellabs, Inc.,* 245 F.R.D. 345, 350 (N.D. Ill. 2007); *Flanagan v. Allstate Ins. Co.,* 242 F.R.D. 421, 428 (N.D. Ill. 2007).

In short, in pursuing their own claims, Plaintiffs will advance the interests of the proposed class. *See Falcon,* 457 U.S. at 156; *Keeler,* 149 F.3d at 595. Therefore, Plaintiffs have met their burden in establishing the typicality requirement under Rule 23(a)(3).

## D.      Adequacy

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625; *see also Asher v. Baxter Int'l Inc.,* 505 F.3d 736, 737 (7th Cir. 2007) ("Minimum standards of adequacy

are the domain of Fed.R.Civ.P. 23(a)(4), which permits a class action only if 'the representative parties will fairly and adequately protect the interests of the class.'").  To establish the adequacy requirement, class representatives must show that (1) their claims are not antagonistic or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and (3) experienced, competent counsel represents them.  *See Rosario,* 963 F.2d at 1018; *see also Falcon,* 457 U.S. at 156.

Asset Acceptance does not challenge the adequacy of Plaintiffs' counsel.  Instead, Asset Acceptance argues that because Scott believes that he does not owe a debt on his telecommunication charges, his claim is antagonistic to the other putative class members' claims.  Whether Scott believes he owes the disputed debt does not change the legal theory on which he bases his claim, namely, that Asset Acceptance filed a time-barred claim against him in state court in violation of the FDCPA.  Asset Acceptance also argues that Cotton is an inadequate class representative because he wants to remove the state court judgment from his credit record and does not understand the class claims.  Not only does Asset Acceptance's argument misstate Cotton's deposition testimony, but Cotton's alleged misunderstanding of his claim does not defeat class certification.  *See Murray v. New Cingular Wireless Servs., Inc.,* 232 F.R.D. 295, 300 (N.D. Ill. 2005) ("It is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification, unless his ignorance unduly impacts his ability to vigorously prosecute the action.") (internal citation omitted).  Asset Acceptance gives no other relevant reason for denying class certification based on the adequacy requirement.  Because there are no inconsistencies between Plaintiffs' claims and the class members' claims, Plaintiffs have established the adequacy requirement under Rule 23(a)(4).  *See Uhl v. Thoroughbred Tech. & Telecomm., Inc.,* 309 F.3d 978, 985 (7th Cir. 2002).

## II. Federal Rule of Civil Procedure 23(b)(3)

Under Rule 23(b)(3), the Court must determine whether (1) the questions of fact or law common to the class members predominate over questions affecting only the individual class members, and (2) a class action is superior to other available methods of adjudicating plaintiffs' claims. *See Amchem Prods.,* 521 U.S. at 615; *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1019 (7th Cir. 2002). The Court first turns to the predominance requirement.

### A. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623. In other words, under Rule 23(b)(3), "each member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to repetitive individual litigation of the same questions." *Lemon v. International Union of Operating Eng'g, Local No. 139, AFL-CIO,* 216 F.3d 577, 581 (7th Cir. 2000). The existence of factual or legal differences within a class does not foreclose a plaintiff from establishing predominance. *See Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir. 1980); *see also Radamanovich v. Combined Ins. Co. of Am.,* 216 F.R.D. 424, 435 (N.D. Ill. 2003) ("Although the common issues must predominate the case, it is not necessary that the plaintiff show them to be exclusive.").

When determining if a plaintiff has met the predominance requirement, district courts may look beyond the pleadings and determine whether the parties' claims are subject to proof by common evidence. *See Radamanovich,* 216 F.R.D. at 43; *see also Falcon,* 457 U.S. at 161. (courts may "probe behind the pleadings before coming to rest on the certification question"). If the liability issues are not subject to class-wide proof – but instead require individualized

determinations – the class' common issues do not predominate. *See Radamanovich,* 216 F.R.D. at 435-36; *see also Hyderi v. Washington Mut. Bank,* FA 235 F.R.D. 390, 398 (N.D. Ill. 2006) ("predominance is concerned with whether the putative named plaintiffs can, through their individualized cases, offer proof on a class-wide basis") (citing *Hewitt v. Joyce Beverages of Wis., Inc.,* 721 F.2d 625, 628-29 (7th Cir. 1983)).

Key to Plaintiffs' class definition is the requirement that Asset Acceptance filed a lawsuit against each putative class member "to collect a debt for cellular or other federally regulated telecommunications services." Based on the class definition, Asset Acceptance argues that Plaintiffs' proposed class depends on factual determinations that will be different for each class member. Specifically, Asset Acceptance maintains that the potential class members will have telephone bills that contain both federally-regulated interstate charges in which the federal two-year statute of limitations may apply, *see* 47 U.S.C. § 415, and state-regulated intrastate charges in which the state statutes of limitations may apply. *See* 735 ILCS 5/13-206 (ten-year limitations period for breach of contract claims in Illinois); Wis. Stat. § 893.43 (six-year limitations period for breach of contract claims in Wisconsin); Ind. Code §§ 34-11-2-9, 344-11-2-11 (depending on the nature of the contract, ten or six-year limitations period for breach of contract claims in Indiana). As such, Asset Acceptance argues that the each of the putative class member's claims and defenses hinges on individualized evidence.

In support of its argument, Asset Acceptance provides the Court with a sampling of 400 files of individuals who potentially meet Plaintiffs' proposed class definition. (*See* R. 64-1, Ex. A, M. Beach Decl., Ex. 1, Sampling.) Michael Beach, Asset Acceptance's Assistant Vice President of Legal, explained in his declaration that as part of the discovery in this matter, Asset Acceptance agreed to produce a 5% sampling of the accounts of approximately 7,908 individuals

who potentially fall within the putative class defined in Plaintiff's First Amended Complaint. (*Id.*, M. Beach Decl. ¶ 7.) The sampling reveals that of the 400 accounts compiled, approximately 235 include charges for land line services, approximately 52 accounts include charges for cellular services, and that 113 accounts include charges for both land line and cellular services. Accordingly, Asset Acceptance argues that the Court will be required to conduct an individual inquiry into each of the debtor's bills to determine which debts were time-barred when Asset Acceptance filed the state court lawsuits.

A review of these documents, however, reveals that identifying members of the proposed class is not as difficult as Asset Acceptance suggests. Instead, the process of identifying class membership and proof of class members' FDCPA claims are ministerial in nature because the information can be easily extracted from the class members' phone bills. *Compare Lau v. Arrow Fin, Servs.,* LLC, 245 F.R.D. 620 (N.D. Ill. 2007) (inquiring into each class member's records to determine class membership does not preclude class certification) *with Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) (membership in class depended on individual's state of mind); *Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 332 (N.D. Ill. 2006) (proof of fraud allegations were plaintiff-specific). Under the present circumstances, whether an individual fits the definition of the proposed class, as well as the evidence supporting their FDCPA claims, can be determined on an objective, class-wide basis, and thus Asset Acceptance's argument that liability questions are not subject to class-wide proof fails.

**B.    Superiority**

Finally, the Court must determine whether a class action is superior to other methods for the adjudication of the proposed class' claims. *See Szabo,* 249 F.3d at 676. A class does not satisfy the superiority requirement if its claims are not governed by the same legal rules. *See In*

*re Bridgstone/Firestone,* 288 F.3d at 1015. Here, the proposed class' claims concern the same

alleged violations of the FDCPA, namely, whether Asset Acceptance's conduct constitutes an

unfair or deceptive collection practice. *See* 15 U.S.C. §§ 1692e, 1692f. In addition, the Seventh

Circuit teaches that class treatment for actions involving thousands of consumer class members

with the same claim are superior to individual actions:

> Rule 23(b)(3) was designed for situations such as this, in which the potential
> recovery is too slight to support individual suits, but injury is substantial in the
> aggregate. Reliance on federal law avoids the complications that can plague
> multi-state classes under state law, and society may gain from the deterrent effect
> of financial awards.

*Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 953 (7th Cir. 2006) (internal citations

omitted); *see also Cicilline*, 542 F.Supp.2d at 838 ("Class certification is usually considered a

superior method of adjudicating claims involving standardized conduct."). The Court's

conclusion that a class action is superior to individual lawsuits under the circumstances is also

supported by "the policy at the very core of the class action mechanism[,]" which "is to

overcome the problem that small recoveries do not provide the incentive for any individual to

bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338,

344 (7th Cir. 1997). Plaintiffs have thus established superiority under Rule 23(b)(3).

## <u>CONCLUSION</u>

For these reasons, the Court grants Plaintiff's Motion For Class Certification pursuant to

Federal Rule of Civil Procedure 23.

**Dated:** June 26, 2008

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Judge**